IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| NANCY T. KESELYAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:16-cv-04101-MDH |
| ) | |
| THE CURATORS OF THE UNIVERSITY ) | |
| OF MISSOURI, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is the Defendant's Motion to Dismiss (Doc. 11). The Court, after full careful consideration, hereby **GRANTS** Defendant's motion.[1]

## I. BACKGROUND

Pro se Plaintiff, a tenured professor at the University of Missouri Kansas City (UMKC) School of Dentistry, commenced the present action against her employer, the Curators of the University of Missouri ("University"), alleging the University violated her rights under the Family and Medical Leave Act ("FMLA"). Plaintiff alleges she is employed as a tenured professor at the University and receives healthcare benefits from the University but the University improperly suspended her salary as of April 22, 2014.

The factual allegations pleaded in the Complaint are as follows. Plaintiff alleges she suffered a serious injury to her right ankle, left knee, and head when she fell down a flight of stairs on UMKC's campus on December 16, 2013. Plaintiff alleges she worked from home from December 17, 2013 to January 17, 2014 and then stopped working completely on January 17, 2014. Plaintiff alleges she requested a neurological examination from University Risk Manager

---

[1] The Court finds supplemental suggestions are not necessary to decide the issues before the Court and, therefore, the Court hereby **DENIES** Defendant's motion for leave to file supplemental suggestions (Doc. 34).

1

Peter Maxwell on January 17, 2014 and that Maxwell authorized a CT scan. Plaintiff alleges the CT scan revealed a possible brain injury. Plaintiff alleges University doctors removed Plaintiff from computer use on January 29, 2014 and referred her to a neurologist for treatment. According to Plaintiff, the neurologist recommended a brain MRI, medication, and therapy, and the MRI conducted on March 12, 2014 confirmed that Plaintiff had a brain injury.

Plaintiff alleges she received numerous communications from the University between approximately January 13, 2014 and April 22, 2014, all of which are attached as exhibits to her Complaint. Compl., Ex. B-F. In those communications, the University informed Plaintiff of her option to apply for FMLA, discussed Plaintiff's failure to perform her duties, notified Plaintiff she was required to return to work unless she provided a physician's note or took vacation or leave, and asked Plaintiff how the University could assist her in returning as an engaged faculty member. On April 9, 2014, the University sent Plaintiff a letter informing her that unless she applied for Family Medical Leave by April 21, 2014 and provided adequate information from a physician documenting her need for leave, Plaintiff's salary would be suspended pursuant to Mo. Rev. Stat. § 172.340[2] for failure to discharge her duties. Compl., Ex. E.[3]

---

[2] That provision states:
> Should the president, or any professor, instructor or other person holding office in the university, by selection, appointment, contract or engagement of the board of curators, fail to discharge for any length of time his official duties, without having obtained the permission of said board, the salary or compensation of such president, professor, instructor or other person holding office in the university shall cease for the time he shall so fail to discharge his official duties, and no compensation shall be allowed for such time, but if said board shall be satisfied that such president, professor, instructor or other person holding office in the university as aforesaid had good cause for failing to discharge his official duties, then no part of his salary or compensation shall be deducted or withheld on account of such failure.

Mo. Rev. Stat. § 172.340.

[3] The letter further explained:
> As an academic employee of the University of Missouri- Kansas City, you are not a participant in any paid leave plans, such as sick leave or annual leave, which would permit the continuation of your salary under existing circumstances. In addition, you have not made application for leave, under the Family Medical Leave Act (although you were supplied with information about your

The University sent Plaintiff another letter on April 25, 2014 notifying Plaintiff that her salary was suspended as of April 22, 2014. That letter stated:

> Because you did not resume your work duties, nor request FMLA, nor respond to my office on or before the April 21, 2014 deadline previously indicated in my letter of April 9, 2014, this is notification that your salary is suspended, in accordance with the provisions of Section 172.340, RSMo effective April 22, 2014. The suspension of your salary shall be effective from April 22, 2014 until you return to work or you request Family and Medical Leave and FML is approved. Should you not return to work or be approved for FML such suspension of your salary will continue until the end of the academic year (August 31, 2014) at which time we will evaluate this situation. If you have any questions about requesting FML, please contact Human Resources at 816-235-1621.

Compl., Ex. F. Plaintiff alleges she never applied for FMLA leave in 2014. Plaintiff alleges she did not need "FMLA protections" because "[b]y not stopping Keselyak's salary after Keselyak stopped working on 1/17/14, the Curators confirmed Keselyak had good cause [under Mo. Rev. Stat. § 172.340] for failing to discharge her UM duties" and "Keselyak is entitled to 100% of her UM salary if the Curators are satisfied Keselyak has good cause for failure to discharge her duties."

Plaintiff claims the University violated the FMLA by: (1) interfering with Plaintiff's "FMLA right to oppose UM's FMLA actions"; (2) retaliating against Plaintiff "by suspending [her] UM salary on 4/22/14 for not applying for FMLA leave by 4/21/14"; (3) suspending her salary when "the FMLA precludes the use of the FMLA to deny more substantial state benefits and protections"; (4) suspending her salary "because [she] would not apply for FMLA leave and authenticate a fraudulent UM FMLA Employer Notice UM sought to use to establish that [she] had abandoned her UM employment, which UM would use to terminated [her] under the FMLA, after [she] applied"; and (5) violating employer notice duties under the FMLA. Plaintiff requests

---

rights to do so on (January 13, 2014), nor made application for long-term disability under the University's long-term disability plan.

Compl., Ex. E, at 1.

a court order lifting the salary suspension and an award of money damages including back pay and restoration of monies to her retirement accounts and social security accounts.

The University moves to dismiss Plaintiff's claims under Rule 12(b)(1) and 12(b)(6) arguing Plaintiff's claims are barred by Eleventh Amendment immunity and fail to state a claim.

## II. STANDARD

Sovereign immunity is a jurisdictional, threshold matter that is properly addressed under Rule 12(b)(1). *Sundquist v. Nebraska*, 122 F. Supp. 3d 876 (D. Neb. 2015) (citing *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014)). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial attack, the court "restricts itself to the face of the pleadings" and "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). A facial attack merely questions the sufficiency of the subject matter jurisdiction as alleged in the complaint, and the court will find subject matter jurisdiction exists where the plaintiff's allegations establish federal claims. *See generally Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

"To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff must plead facts that show more than a mere speculation or possibility that the defendant acted unlawfully. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4

555 (2007). While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions. *Ashcroft*, 556 U.S. at 678. The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

While "pro se complaints are to be construed liberally," the Court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

### III. ANALYSIS

Taking the factual allegations in the Complaint as true, the Court finds dismissal of Plaintiff's claims is appropriate. Plaintiff's claims are barred by Eleventh Amendment immunity such that the Court lacks subject matter jurisdiction. Even assuming Plaintiff's claims were not barred by Eleventh Amendment immunity, Plaintiff has failed to state a cognizable federal claim.

#### A. Eleventh Amendment Immunity

"The Eleventh Amendment immunizes an unconsenting State from damage actions brought in federal court, except when Congress has abrogated that immunity for a particular federal cause of action." *Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999); *see generally Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73, 120 S. Ct. 631, 640, 145 L. Ed. 2d 522 (2000) ("[F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States."). Three exceptions exist to Eleventh Amendment immunity: (1) where the state waives immunity by consenting to suit in federal court, (2) where Congress abrogates the state's immunity through valid exercise of its powers, and (3) under *Ex parte Young*, 209 U.S. 123 (1908), where the plaintiff files suit

5

against state officials seeking prospective equitable relief for ongoing violations of federal law. *Sundquist v. Nebraska*, 122 F. Supp. 3d 876 (D. Neb. 2015).

Here, the University is entitled to Eleventh Amendment immunity. "The Eleventh Amendment encompasses not only actions where the state is actually named as a defendant, but also certain actions against state instrumentalities." *Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999). In accordance with this principle, the Eighth Circuit has stated that "State universities and colleges almost always enjoy Eleventh Amendment immunity." *See id.* (quoting *Hadley v. N. Arkansas Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996)). This Court has previously determined that the University of Missouri is considered an instrumentality of the State of Missouri and is entitled to Eleventh Amendment immunity. *Sherman v. Curators of Univ. of Missouri*, 871 F. Supp. 344, 348 (W.D. Mo. 1994) (assessing University of Missouri on the basis of its own particular circumstances and determining it is a state instrumentality acting as an arm of the State of Missouri and enjoys Eleventh Amendment protection); *see also Scherer v. Curators of Univ. of Missouri*, 49 F. App'x 658, 658 (8th Cir. 2002) (citing *Sherman* and affirming dismissal of ADA claim based on Eleventh Amendment immunity). Accordingly, the University is entitled to Eleventh Amendment immunity in this case absent waiver, abrogation, or application of *Ex parte Young*.

Here, none of the three exceptions to Eleventh Amendment immunity apply. First, the University has not waived its Eleventh Amendment immunity by consenting to suit in federal court.[4] Second, Congress has not validly abrogated the University's immunity for FMLA claims

---

[4] To the extent Plaintiff argues the University consented to be sued in federal court under Mo. Rev. Stat. § 172.020 – which states the University has the power to generally "sue and be sued" – Plaintiff is mistaken. *See Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 149 (1981); *McKlintic v. 36th Judicial Circuit Court*, 508 F.3d 875, 877 (8th Cir. 2007); *see also Thompson v. Regents of Univ. of California*, 206 F. App'x 714, 715 (9th Cir. 2006). To the extent Plaintiff argues the University waived its immunity by entering a notice of appearance and then moving to dismiss the case, Plaintiff is also mistaken. *See Skelton v. Henry*, 390 F.3d 614, 618 (8th Cir. 2004); *Fromm v. Comm'n of Veterans Affairs*, 220 F.3d 887, 890 (8th Cir. 2000). Finally, to the extent

6

arising from the self-care provision.[5] *See Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 1338 (2012) (holding Congress did not validly abrogate states' Eleventh Amendment immunity from suits for money damages in enacting the self-care provision); *see, e.g., Hubbard v. St. Louis Psychiatric Rehab. Ctr.*, 556 F. App'x 547, 548 (8th Cir. 2014) (holding dismissal was appropriate because the defendants were immune from suit for alleged violations of the FMLA's self-care provision). Third, although Plaintiff appears to seek some injunctive relief in addition to monetary damages, Plaintiff has not sued any state employee acting in his/her official capacity such that the exception in *Ex Parte Young* applies. *See, e.g., Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015).

Accordingly, the Court finds Plaintiff's claims against the University are barred by Eleventh Amendment immunity and the Court lacks subject matter jurisdiction to hear them.

---

Plaintiff argues the University waived immunity by referring to Plaintiff's FMLA rights in correspondence and in University employee leave regulations, Plaintiff is mistaken. *See generally McKlintic v. 36th Judicial Circuit Court*, 508 F.3d 875, 877 (8th Cir. 2007) ("[A] state's grant to an employee of a substantive right with no mention of whether that right can be enforced against the state in federal court does not effect a waiver of Eleventh Amendment immunity."); *see, e.g., Quinnett v. Iowa,* 644 F.3d 630, 633 (8th Cir. 2011); *Hainen v. Barragan-Scott*, No. 09-4173-CV-C-NKL, 2010 WL 318520, at *2 (W.D. Mo. Jan. 20, 2010).

[5] The self-care provision is codified at 29 U.S.C. § 2612(a)(1)(D) and states that an eligible employee shall be entitled to 12 workweeks of leave during any 12-month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." It is clear that all of the alleged violations cited by Plaintiff arise from the self-care provision of the FMLA. Plaintiff argues her claims are not barred because "Keselyak did not invoke the FMLA's 29USC2612 [sic] self care provision [but rather] Keselyak invoked employee protection provisions in 29USC2615 and 29USC2651." The Court notes that § 2615 discusses prohibited acts and simply makes it unlawful for an employer to interfere with, restrain, or deny the exercise or attempted exercise of "any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Thus, a claim under that section is necessarily tied to a right provided elsewhere. *See, e.g.*, *Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) (holding court did not have jurisdiction over the plaintiff's interference or retaliation claims to the extent they related to her self-care leave rather than family-care leave). Similarly, § 2651 states "[n]othing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act[.]" *Id.* at § 2651. Again, that provision vests no rights itself and in no way abrogates Plaintiff's Eleventh Amendment immunity to FMLA claims related to the self-care provision. Finally, the FMLA regulation cited by Plaintiff regarding employer notice requirements states that "[f]ailure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e). Again, a claim under that section is necessarily tied to a right provided elsewhere. It is clear that none of these provisions create enforceable rights, alone, but rather, all of the alleged violations cited by Plaintiff stem from Plaintiff's right to take (or not take) leave under the self-care provision.

7

## B. Failure to State a Claim

Even assuming Plaintiff's claims are not barred by Eleventh Amendment immunity, Plaintiff's claims are subject to dismissal for failure to state a claim. Plaintiff admits in her complaint that she never applied for FMLA leave and she never sought to take advantage of FMLA benefits. Instead, Plaintiff seeks to hold the University liable for interference with or retaliation against her for her refusal to take FMLA leave. Such allegations do not show an entitlement to benefits under the FMLA. *See generally Kobus v. Coll. of St. Scholastica, Inc.*, 608 F.3d 1034, 1037 (8th Cir. 2010); *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1244 (9th Cir. 2014). Further, Plaintiff's complaint is premised entirely upon the alleged wrongful discontinuation of Plaintiff's salary; however, the FMLA provides only a right to unpaid leave. *See generally Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 739 (2003) ("The FMLA requires only unpaid leave, 29 U.S.C. § 2612(a)(1)[.]"). Finally, to the extent Plaintiff alleges the University violated employer notice requirements under the FMLA, Plaintiff has failed to establish any prejudice resulting from such violations. *See generally Vannoy v. Fed. Reserve Bank of Richmond*, No. 14-2375, 2016 WL 3536656, at *4 (4th Cir. June 28, 2016) ("An FMLA notice violation can be an actionable interference claim for which an employee may recover, so long as he makes a showing of prejudice flowing from the violation."). Plaintiff's complaint, taken as a whole, unequivocally indicates that Plaintiff did not intend to take advantage of any right provided by the FMLA but, instead, Plaintiff intended to invoke perceived benefits under Mo. Rev. Stat. § 172.340 which Plaintiff perceived to be greater than those provided by the FMLA.

## IV.  DECISION

Based on the foregoing, Defendant's Motion to Dismiss (Doc. 11) is hereby **GRANTED** and all federal claims asserted in this matter are hereby **DISMISSED**.[6]  All other pending motions are denied as moot and the case is closed.

**IT IS SO ORDERED**.
Date: August 2, 2016

                                                   */s/ Douglas Harpool*
                                                   **DOUGLAS HARPOOL**
                                                   **UNITED STATES DISTRICT JUDGE**

---

[6] To the extent Plaintiff's complaint pleads sufficient factual matter to assert a state law cause of action, such cause of action is hereby dismissed without prejudice.  This ruling does not preclude Plaintiff from proceeding in state court with a state law cause of action.